IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-CV-01542-MJW

BRUCE P. KRIEGMAN as Chapter 11 Trustee for LLS America,

        Plaintiff,

v.

ALEX MIRROW and SAVE IT, LLC,

        Defendant.

### TRUSTEE'S OBJECTION TO MOTION TO WITHDRAW

Plaintiff, Bruce P. Kriegman as Chapter 11 Trustee for LLS America ("Trustee"), by and through his attorneys, Campbell, Killin, Brittan and Ray, LLC, objects to John L. Green's ("Attorney Green") Motion to Withdraw (#71) ("Motion"), and in support, states as follows:

1. Close scrutiny of the Motion substantiates what the Trustee had repeatedly alleged—that even though Attorney Green claims (and has represented to the Court) that he represents only Fatima and Seymour Mirrow (the "Senior Mirrows"), in actual fact, he is continuing to represent and protect the interests of Judgment Debtor Alex Mirrow, and it is Alex Mirrow who has been directing Attorney Green's conduct all along. And that is why Attorney Green's actions have primarily if not exclusively served the needs and purposes of Alex Mirrow. The Court should enter an order confirming that Attorney Green represents Alex Mirrow and requiring that he comply with the Court's outstanding orders and obtain substitute counsel for the Senior Mirrows before he is permitted to seek leave to withdraw..

2. In paragraph 2 of the Motion, Attorney Green makes the astonishing admission that, when he originally entered his appearance in this case, he did so "<u>without express consent</u>"

of the Senior Mirrows after "copies of the subject Subpoenas were sent to his office." Thus, the Subpoenas must have been sent to Attorney Green's office by someone else—likely Alex Mirrow, who resided with the Senior Mirrows at the time and for whom the Trustee maintains Attorney Green had entered his appearance. See Entry of Appearance, Doc. #14. The Senior Mirrows' deposition testimony shows that they had never even seen the Subpoenas before the depositions and were never shown of the Orders the Court had entered regarding them (i.e. the Order denying the Motions to Quash and directing them to comply). See transcripts of the depositions of Seymour and Fatima Mirrow, copies of referenced portions of which are attached as **Exhibit A** (Seymour Mirrow, p 22:17 to 23:14) and **Exhibit B** (Fatima Mirrow, p. 31:14 to 34:5). Thus, not only had Attorney Green failed to obtain the Senior Mirrows' consent to his representation, he proceeded to file the Emergency Motion to Quash on their behalf without their even knowing he was doing so and then he failed to advise them of the Court's Orders regarding the Motion and related filings. This is entirely consistent with Attorney Green's having filed the Emergency Motion to Quash at *Alex Mirrow's* behest (and perhaps pursuant to the Powers of Attorney he holds for his parents) as part of an effort on his part to avoid discovery regarding his financial affairs.

2. The reason for Attorney Green's unauthorized conduct which is stated in the Motion (which raises both legal and ethical questions), is that he had represented the Senior Mirrows over the years and "knew that their capacity was diminishing." This is also consistent with Attorney Green's acquiescing to Alex Mirrow's having taken control over the Senior Mirrows' affairs and allowing Alex Mirrow to direct his representation.

3. Then Attorney Green, knowing the Senior Mirrows' capacity was diminishing (and arguing they were suffering from progressive dementia; see Emergency Motion to Quash, filed December 28, 2018, Doc. # 16) continued to represent them, filing pleading after pleading on their

behalf objecting to the Trustee's efforts to obtain discovery from them regarding *Alex Mirrow's* financial affairs, which had the effect of blocking the Trustee's collection efforts and thus protecting Alex Mirrow's interests, a position in which the Senior Mirrows would otherwise have no interest. At their depositions, the Senior Mirrows denied even knowing the Judgment against their son existed, so they could not possibly have formulated a position with respect to its collection. See transcript of the deposition of Fatima Mirrow, a copy of the referenced portion of which is attached as Exhibit B, p. 45:16-46:4.

    4.    Faced with the Court's Order to produce the Senior Mirrows' bank records and pay certain of the Trustee's attorneys' fees as a sanction, Attorney Green drops all pretenses in an attempt to justify his mid-stream abandonment of the Senior Mirrows' representation knowing that, if he is successful, it will only further thwart the Trustee's efforts to reach the assets that Alex Mirrow controls (including the assets of his parents). Attorney Green has contrived the following reasons for his seeking authorization to withdraw:

    a.    an alleged conflict which has suddenly arisen—apparently related to his production of the Senior Mirrows' wills over the objection of their heirs (presumably because he represents the heirs; see Motion, paragraph 3);

    b.    his representation "has been rendered unreasonably difficulty or other good cause exists"[1] because:

        (i)    he allegedly cannot "access the private records" of the Senior Mirrows;

        (ii)    he "does not have a Power of Attorney for the Senior Mirrows and needs one in order to get their banking records;" and

---

[1] Attorney Green cites to the Colorado Rules of Professional Conduct rather than the Texas Rules.

{00353638.DOCX / 1}

  (iii) the Senior Mirrows are allegedly incompetent ("Furthermore, Senior Mirrows have diminished capacity and are in need of a guardianship and undersigned counsel has no authority to <u>further</u> represent them in this matter" (emphasis added)).

Motion, paragraph 4.

5. Attorney Green's new, conveniently discovered, rationale for withdrawal is not credible or consistent with his previous statements and behavior. Specifically:

 a. The production of the Senior Mirrows' wills (which could have been done under an appropriate protective order if Attorney Green had requested one) in obedience to this Court's Order, even if over the heirs' objection (not the Senior Mirrows' objection), should not have created a conflict justifying withdrawal (even if Attorney Green represents the heirs—which, if he does, as discussed below, would require him to protect their interests, which he decidedly has not done).

 b. Attorney Green's representation has not been rendered any more difficult than it was from the beginning (other than the fact he must now assist in the production of bank records that implicate Alex Mirrow).

  (i) If Attorney Green cannot actually "access the private records" of the Senior Mirrows, and the Senior Mirrows are incompetent, then how was he able to determine that they do not have any life insurance, and how could he have represented to this Court that he searched their home and he has determined that they did not have any other documents responsive to the Subpoenas?

  (ii) If Attorney Green needs a Power of Attorney in order to obtain any of the Senior Mirrows' bank records (keeping in mind that Attorney Green is

    admittedly the Senior Mirrows' long time CPA and tax preparer), then how was he able to represent to the Court, at the September 26, 2018 Motions Hearing, that he knew that Alex Mirrow had withdrawn money form their account(s) without their permission?

(iii) If the Senior Mirrows are truly in need of a guardian, then they must not have had one or have one at the present time and, therefore, if they have no guardian, who has been giving Attorney Green authority to represent them in connection with their persistent resistance to the Trustee's discovery efforts (including through the September 26, 2018 Motions hearing) and who could have terminated Attorney Green's "further" authority to represent them?[2]

6. The answer to these questions is, of course, that Alex Mirrow, the person who holds the Powers of Attorney (since 1992), is actually making the decisions that inform and direct Attorney Green's conduct—the same Alex Mirrow for whom Attorney Green entered his appearance, both in an adversary proceeding in the LLS the Washington bankruptcy proceedings and in this case. See Motion for Admission Pro Hac Vice, Declaration of Attorney Green and minute order (Doc. #161) filed and entered in the LLS bankruptcy, copies of which are attached collectively as **Exhibit C**, and Entry of Appearance filed herein on December 23, 2015 (Doc.# 14).[3]

7. Attorney Green acknowledges that Alex Mirrow is employing to the Power of Attorney Fatima Mirrow gave him, but does not explain why his client Alex Mirrow cannot use

---

[2] If the Senior Mirrows needed a guardian to act between them and Attorney Green, one should have been appointed long ago, and the attempt in the Motion to posit that as an issue now is disingenuous.

[3] Clearly, it could not have been the Senior Mirrows' caregiver, Glenn Ayers, because, as Attorney Green has made abundantly clear, Mr. Ayers told him he did not have any authority to represent him.

{00353638.DOCX / 1}

it to obtain the Senior Mirrows' bank records—bank records which he has thus far continued to refuse to produce in violation of the Court's most recent Order. See Motion, paragraphs 4 (re Power of Attorney and Exhibit A (the Power of Attorney)[4] and 6 (re alleged provision of the records). In the "Notice of [Alleged] Compliance" ("Notice"), Attorney Green admits he knows his client "Alex Mirrow is in Houston, Texas, has agreed to provide Attorney Green with available bank records, and is retaining counsel." See Notice, paragraph 9. However (and as set forth in the Trustee's Response to Attorney Green's Notice), contrary to the statement made in paragraph 6 of the Motion ("Undersigned counsel sent the [bank] records provided to Plaintiff's counsel today, November 8, 2018"), as of the filing of this Objection (November 27, 2018), <u>the Trustee's undersigned counsel has not received any of the Senior Mirrows' bank records</u>.[5]

10.   Further confirmation of Attorney Green's contact with Alex Mirrow and his ongoing effort to protect Alex Mirrow's interests is found in paragraph 8 of the Motion, where he claims the Trustee "has not indicated that he has an interest in his [Alex Mirrow's] deposition or recorded statement" and cites to the cover pages of transcripts of hearings conducted in the Washington LLS bankruptcy action. As this Court is well aware (i.e. by virtue of the fact the only reason the Trustee has pursued discovery from the Senior Mirrows is because he has been unable to obtain it from Alex Mirrow, who has successfully avoided service, and the Trustee is making an ongoing effort to locate Alex Mirrow), this statement could not be further from the truth. The transcript cover sheets relate to public telephonic hearings which Alex Mirrow attended by phone, either to listen to the proceedings or to be heard. The hearings did not allow for anything other

---

[4] Alex Mirrow has a Power of Attorney from his father, Seymour Mirrow, as well. A copy is attached hereto as **Exhibit D**.

[5] In addition, (and also as set forth in the Trustee's Response to the Notice), the Trustee and Attorney Green have not reached an agreement on the amount of the attorneys' fees the Trustee should be paid according to the Court's Order for sanctions.

{00353638.DOCX / 1}

than argument and communications to the Judge. The Trustee had no reason to mention or address Alex Mirrow's deposition. However, Attorney Green's statement raises telling questions: Who put him up to making this statement? The Senior Mirrows have absolutely no legitimate interest in resisting the Trustee's deposition of Alex Mirrow. It is only Alex Mirrow who does. And where did Attorney Green get the cover pages for the transcripts and who told him what allegedly happened at the hearings? These questions answer themselves.

11.     Accordingly, and in sum, Attorney Green's claims that "no one will be prejudiced or otherwise affected by [his] withdrawal…" (Motion, paragraph 8), and "[i]t would serve the interests of justice for the Court to grant permission to-…withdraw" (Motion, paragraph 10) is all wrong. If Attorney Green (and Alex Mirrow) have their way, the Senior Mirrows will be left unrepresented in these proceedings. Attorney Green's convenient withdrawal will only frustrate the Trustee's efforts to obtain bank records and other discovery from the Senior Mirrows and Alex Mirrow and further the evasive tactics of Alex Mirrow.

WHEREFORE, the Trustee respectfully submits that it would inappropriate to permit Attorney Green to withdraw at this time, and requests the Court deny the Motion and enter an order requiring that, before he may seek leave to withdraw for the (Snior Mirrows) (or Alex Mirrow); (1) he and the Senior Mirrows comply fully with the Court's outstanding orders; and (2) the Senior Mirrows (and Alex Mirrow) obtain substitute counsel.

DATED this 27th day of November, 2018.

CAMPBELL KILLIN BRITTAN & RAY, LLC

{00353638.DOCX / 1}

|  |  |
|---|---|
| By: | */s/ Bruce E. Rohde* |
|  | Bruce E. Rohde, #11465 |
|  | 270 St. Paul Street, Suite 300 |
|  | Denver, Colorado 80206 |
|  | Phone: (303) 322-3400 |
|  | Fax: (303) 322-5800 |
|  | Email: brohde@ckbrlaw.com |

ATTORNEYS FOR PLAINTIFF
Bruce P. Kriegman, as Chapter 11 Trustee for LLS America

## CERTIFICATE OF SERVICE

I hereby certify that on November 27 2018, a true and correct copy of the foregoing **TRUSTEE'S RESPONSE TO MOTION TO WITHDRAW** was served via United States Mail, addressed to the following:

John L. Green, Esq.
4888 Loop Central Drive, Suite 445
Houston, TX 77081
Jlgreen488@aol.com

Attorney for Defendant.

s/*Samantha Merrick*
Samantha Merrick

{00353638.DOCX / 1}