IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01542-PAB-NRN

BRUCE P. KRIEGMAN, as Chapter 11 Trustee for LLS America, LLC,

Plaintiff,

v.

ALEX MIRROW and
SAVE IT, LLC,

Defendants.

## ORDER

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court upon Defendant Alex Mirrow's Response to Order Compelling Payment or to Supplement Record (Dkt. #228), which he filed in response to this Court's Order Compelling Payment or to Supplement Record. (Dkt. #226.) Upon review of the requested supplemental information, I find that Mr. Mirrow has carried his burden to show that his compliance with this Court's orders compelling payment of sanctions is not possible. Therefore, I decline to hold Mr. Mirrow in contempt for his failure to pay sanctions.

## BACKGROUND

This case has a long, tortured factual and procedural background which this Court detailed in four orders: Order Re: Plaintiff's Motion for Sanctions and Non-Parties' Motion for Protective Order (Dkt. #66), Order Re: Plaintiff's Motion to Compel and For Order to Show Cause entered on April 17, 2020 (Dkt. #153), Order Denying without

Prejudice Plaintiff's Motion for Order to Show Cause (Dkt. #161), and Order Compelling Payment or to Supplement Record (Dkt. #226.) The Court assumes the parties' familiarity with the history and will not repeat it here except as necessary.

As a sanction for filing a groundless motion to quash document subpoenas served on Mr. Mirrow in Texas, this Court ordered that Mr. Mirrow was required, jointly and severally with his Texas counsel, Craig Kyle Hemphill, to pay Plaintiff Bruce P. Kriegman, as Chapter 11 Trustee for LLS America, LLC (the "Trustee"), $9,941.25 in attorney fees. (Dkt. #186.)

After failing to pay the Trustee $9,941.25, the Trustee filed the Motion for Order to Show Cause Why Alex Mirrow Should Not Be Held in Contempt. (Dkt. #195.) On April 14, 2021, this Court ordered Mr. Mirrow to pay Plaintiff $9,941.25 on or before May 5, 2021 or to submit a written response showing cause why he should not be found in contempt for failing to make such payment. (*See* Dkt. #199.) Mr. Mirrow still did not pay the Trustee, but he did file a response to the Court's Order to Show Cause on May 4, 2021. (Dkt. #208.) On May 25, 2021, the Trustee filed his Reply in Support of Motion for Order to Show Cause Why Alex Mirrow Should Not be Held in Contempt. (Dkt. #220.)

Separately, the Trustee filed a Motion for Turn Over of Funds and Passport (Dkt. #194), seeking the turnover of whatever remained of the approximately $300,000[1] that Mr. Mirrow had entrusted to David Perry in Sri Lanka and requiring Mr. Mirrow to sell his condominium in Mexico and turn over the proceeds to the Trustee. The Trustee also asks this Court to compel Mr. Mirrow to turnover his passport. (*Id.*)

---

[1] At his deposition, Mr. Mirrow testified that he estimates between $40,000 and $50,0000 remains with Mr. Perry.

2

In his Response for Turn Over of Funds and Passport (Dkt. #208) and at the Motion Hearing on July 16, 2021, Mr. Mirrow argued that he does not have access to or control over the Sri Lankan funds, and is thus powerless to turn them over to the Trustee. (*See* Dkt. ##194 at 2, 194-1 – 194-3, 208 at 2.) Mr. Mirrow also explained that his wife objects to the sale of the condominium and, because she is a joint owner, he cannot sell the home and turn over the proceeds to the Trustee.

On June 25, 2021, after reviewing extensive briefing, hearing oral argument, and being unconvinced by Mr. Mirrow's self-serving testimony, I issued the Order Compelling Payment or to Supplement Record. (Dkt. #226.) This Order required Mr. Mirrow to, no later than July 16, 2021, either (1) pay $9,941.25 in sanctions to the Trustee, (2) obtain and turn over the Sri Lankan funds, and (3) begin the process of selling the Mexican condominium and allocating the proceeds from that sale to the sanction order and the judgement against him; or submit convincing documentary proof as to the impossibility of obtaining the Sri Lankan funds and selling the Mexican condominium. Mr. Mirrow objected. *See* (Dkt. #227, Objections to Magistrate Judge's June 25, 2021 Order Compelling Payment or to Supplement the Record.) The Trustee filed a response to the objection (Dkt. #229), and Mr. Mirrow sought and was granted leave to file a reply brief. (*See* Dkt. ##231 & 232.)  Mr. Mirrow's objection remains pending before Chief Judge Philip A. Brimmer.

On July 16, 2021, Mr. Mirrow timely filed his Response to Order Compelling Payment or to Supplement Record (Dkt. #228), which included two exhibits. (Dkt. ##228-1 & 228-2.)

## STANDARDS FOR HOLDING PARTY IN CONTEMPT

The issue presently before me is whether Mr. Mirrow has sufficiently shown that he lacks the present ability to comply with this Court's valid orders and thus should not be held in contempt.

The primary purpose of a civil contempt citation is to compensate for losses sustained by one party due to another party's disobedience of a court order and to compel future compliance with court orders. *See Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 500 (10th Cir. 1980) (citations omitted). Further, "the remedial aspects outweigh the punitive considerations." *Id.* To hold a party in civil contempt, the moving party has the "burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Frederick v. Panda No. 1, LLC*, Civil Action No. 17-cv-0420-WJM-KMT, 2018 WL 4627105, at *4 (D. Colo. Sep. 26, 2018) (citing *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008)). To avoid being held in contempt, the party allegedly in contempt must show he has either complied with the order or articulate why he is unable to comply. *Ford*, 514 F.3d at 1051. The nonmoving party can meet his burden by "producing sufficient detailed evidence of inability to comply." *Cook v. Rockwell Int'l Corp.*, 907 F. Supp. 1460, 1463 (D. Colo. 1995). Then, the party seeking contempt has "the additional burden of persuading the court the defendant is able to comply." *Id.*

## ANALYSIS

In response to the Order Compelling Payment or to Supplement Record, Mr. Mirrow provided (1) three sets of email correspondence between Mr. Mirrow and real

4

estate brokers in which he requests to sell his 50% interest in his condo in Mexico (Dkt. #228-1) and (2) a bizarre and, frankly, brazen affidavit from Mr. Perry (Dkt. #228-2) explaining, among other things, that the funds "simply no longer exist as a current or future asset of Alex Mirrow but solely to my benefit as I direct." (*See id.* at 2.)

The email correspondence attached at Dkt. #228-1 provides convincing evidence that Mr. Perry is unable to sell his 50% interest in the Mexican condominium. None of the three brokers were willing to assist him in selling only a fractional interest in the home. This documentary evidence credibly demonstrates that Mr. Mirrow would be unable to sell his condo without his wife's consent. As such, this asset is not available as a means to pay the order for sanctions or the underlying judgment.

Mr. Perry's affidavit also demonstrates that Mr. Mirrow does not have the present ability to pay the order for sanctions. The legal or contractual validity of Mr. Perry's seemingly egregious actions—announcing that whatever agreement he had with Mr. Mirrow as "null and void," charging Mr. Mirrow $10,000 per year for assisting Mr. Mirrow with this lawsuit, and claiming that he or his heirs will take whatever funds remain for their own purposes—is not before this Court. Instead, I decide only whether Mr. Mirrow has provided credible evidence that he cannot access the Sri Lankan funds. I find that he has. Mr. Perry's affidavit, though flagrant and absurd in its position (indeed, perhaps because of these characteristics), credibly demonstrates that Mr. Mirrow does not have access to the Sri Lankan funds and cannot use them to pay either the attorneys' fees levied against him or the underlying judgment.

I also find it appropriate to consider the Trustee's concomitant Motion for Turn Over of Funds and Passport. (Dkt. #194.) The Trustee's requests to order Mr. Mirrow to

5

turn over the Sri Lankan funds and liquidate his home in Mexico are governed by Federal Rule of Procedure 69(a), which permits a federal district court sitting in Colorado to reference and apply Colorado law in "proceedings on and in aid of execution," unless a federal statute governs such proceedings. "Rule 69(a) . . . defers to state law to provide methods for collecting judgments." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 834 (1988). Colorado Rule of Civil Procedure 69(g) provides:

> The court, master, or referee may order any party or other person over whom the court has jurisdiction, to apply any property other than real property, not exempt from execution, whether in the possession of such party or other person, or owed the judgment debtor, towards satisfaction of the judgment. Any party or person who disobeys an order made under the provisions of this Rule may be punished for contempt. Nothing in this Rule shall be construed to prevent an action in the nature of a creditor's bill.

Colorado recognizes that "[i]ssuance of a writ of execution . . . is not an exclusive remedy, and the plaintiff . . . therefore [is] entitled to employ supplemental proceedings in aid of execution to collect the judgment from the defendants' property." *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1235–36 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001) (quoting *First Nat'l Bank of Denver v. District Court*, 652 P.2d 613, 617 (Colo. 1982)). The Tenth Circuit has concluded that "Rule 69(g) gives effect to this entitlement and permits entry of a turnover order." *Id.* at 1236; *see also Entitle Ins. Co. v. Durling*, No. 11-CV-00561-CMA-KMT, 2012 WL 223915, at *1 (D. Colo. Jan. 25, 2012) (stating "the Court may enter a turnover order 'in aid of execution' of the . . . Judgment, provided that it defers to state law to provide methods for collecting judgment" (citations omitted)).

6

Given that Mr. Mirrow has credibly demonstrated that he does not have access to the Sri Lankan funds and is unable to sell his interest in the Mexican condominium, an order requiring turnover of those same funds would do nothing to aid in the collection of judgment in this matter.

With respect to Mr. Mirrow's passport, the Trustee asserts that "Mr. Mirrow is a flight risk and should not be free to travel the world spending his money . . . and perhaps arranging to sell his Mexico condo and run off with the proceeds." (Dkt. #194 at 4.)[2] Therefore, the Trustee suggests, it is appropriate for this Court to seize his passport in response, Mr. Mirrow contends that seizure of his passport would amount to "judicial overreach" that would deprive him of his constitutional right to travel and impinge upon his religious freedom. (*See* Dkt. #208 at 3–4.)

The Seventh Circuit has held that "the power to order a party to produce funds includes the power to exercise some minimal control over the party subject to that order—but *only when doing so is necessary to protect the court's ability to enforce the underlying order and prevent the loss of assets.*" *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 188–89 (7th Cir. 2011) (citations omitted) (emphasis added). Upholding the district court's seizure of a party's passport, the Seventh Circuit explained:

> Whether such controls are necessary will depend upon the circumstances of the case, but it will be a rare case where any extraordinary steps are needed. In the lion's share of cases, the debtor will not have moved assets to a locale beyond the court's jurisdiction, and thus the court's other powers—especially its power to order the holding financial institution

---

[2] The Trustee also argued that Mr. Mirrow's passport should be confiscated as a contempt sanction for failing to pay the $9,941.25. (Dkt. #194 at 4). Dkt. #195.) This request is dispensed with the finding that Mr. Mirrow has adequately shown that compliance with the order to pay the sanction is impossible, and thus cannot be held in contempt for his failure to comply.

7

> itself to freeze the assets—will be enough to safeguard the court's ability to enforce a production order. But in the outlier case where the court can seize the funds at issue only through a particular party, the district court's ability to enforce a production order is threatened if the party subject to the order demonstrates a risk of flight. In that limited circumstance, a concomitant order exercising some minimal control (in the form of a passport seizure) is permissible.

*Id.* at 189. In *Veluchamy*, the judgment debtors had transferred about 20 million dollars from a United States bank account to an Indian bank account after they defaulted on their loans. *Id.* at 187. As a result of this and other actions, the judgment debtors had few assets in the United States and significant assets overseas. *Id.* at 187, 189. Additionally, the judgment debtors failed to cooperate in providing financial information that would have revealed the transfers. *Id.* at 189. Based on these circumstances, the Seventh Circuit upheld the district court's finding these factors indicated that the Veluchamys presented a flight risk, which justified seizing their passports. *Id.*

After considering the circumstances of this case, the Court finds that the extraordinary step of seizing Mr. Mirrow's passport is unwarranted. There is no evidence that Mr. Mirrow currently has access to the Sri Lankan funds. The Trustee argues that Mr. Mirrow may "very well move to Mexico" and "play the catch-me-if-you-can-game he tried to play earlier." (Dkt. 194 at 4.) Indeed, Mr. Mirrow also stated at the June 16, 2021 hearing that he hopes to move to Mexico at some undetermined time in the future. However, as Mr. Mirrow's counsel noted, the judgment in this matter is over seven years old and though Mr. Mirrow has been evasive, he has yet to flee the country permanently. Additionally, since the appearance of Colorado counsel, Mr. Mirrow has complied with the Court's orders and the Trustee's discovery requests, and been forthcoming with financial information. Any plans to relocate to Mexico are speculative

and undetermined. I cannot find that the Sri Lankan monies or the condominium in Mexico indicate that Mr. Mirrow is a flight risk as would justify seizing his passport.

The Trustee also suggests that Mr. Mirrow's international travel necessitates seizing Mr. Mirrow's passport as he should "not be free to travel the world spending money." (Dkt. #194, at 4; *see also* Dkt. #195.) However, Mr. Mirrow's travel appears to be religiously motivated travel funded by his mother, Fatima Mirrow, or other Jehovah's Witnesses. Seizing his passport to prevent this travel serves only a punitive purpose and would do nothing to protect the Court's ability to enforce the underlying judgment. If other people want to pay for Mr. Mirrow's travel, food, and lodging, nothing about the outstanding judgment or the sanctions order can prevent that. The Trustee's Motion for Turn Over of Funds and Passport (Dkt. #194) must be denied.

## CONCLUSION

In light of Mr. Mirrow's Response to Order Compelling Payment or to Supplement Record (Dkt. #228), it is hereby ORDERED that:

- The Order Compelling Payment or to Supplement Record (Dkt. #226) is DISCHARGED only to the extent it required Mr. Mirrow to supplement the record with additional information;

- The Order Compelling Payment of Sanction by Defendant Mirrow (Dkt. #199) is DISCHARGED only to the extent it required Mr. Mirrow to show cause why he should not be held in contempt for failing to make the required payment; and

- The Trustee's Motion for Turn Over of Funds and Passport (Dkt. #194) is DENIED.

For clarity, this order **does not** discharge Mr. Mirrow's liability for and obligation to pay the $9,941.25 sanction levied jointly and severally against him and his Texas counsel, Mr. Hemphill. The sanction remains valid and Mr. Mirrow remains obligated to

pay it. Should circumstances change such that Mr. Mirrow gains access to the Sri Lankan funds, or his wife consents to selling the condominium in Mexico, or the Trustee learns of additional or new funds to which Mr. Mirrow has access, the Trustee may file a renewed motion seeking turnover of those assets to pay the sanction and/or the underlying judgment.

Dated this 5th day of August 2021.

*N. Reid Neureiter*

N. Reid Neureiter
United States Magistrate Judge